Clarissa A. Kang, SBN 210660
ckang@truckerhuss.com
Sean T. Strauss, SBN 245811
sstrauss@truckerhuss.com
TRUCKER ✦ HUSS
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111
Telephone: (415) 788-3111
Facsimile: (415) 421-2017

Attorneys for Plaintiff
BOARD OF TRUSTEES OF THE CLERKS
AND LUMBER HANDLERS PENSION FUND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CLERKS AND LUMBER HANDLERS PENSION FUND,<br><br>Plaintiff,<br><br>vs.<br><br>PIEDMONT LUMBER & MILL COMPANY; WILLIAM C. MYER, JR., an individual; WENDY M. OLIVER, an individual; WENDY M. OLIVER, as Trustee to the Oliver Family Trust; and DOES 1-20,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR COLLECTION OF WITHDRAWAL LIABILITY (ERISA § 4221(B)(1), 29 U.S.C. § 1401(B)(1))** |

1. This is an action to collect a sum of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan. The action is brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (hereinafter "ERISA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action under the terms of 29 U.S.C. § 1451(c), 29 U.S.C. § 1132(e), 29 U.S.C. § 1401(b)(1), and 28 U.S.C. §§ 1311 and 1337.

3. This Court has personal jurisdiction over the Defendants under 29 U.S.C. § 1451(d) and 29 U.S.C. § 1132(e).

4. This Court has venue over this action pursuant to 29 U.S.C. § 1132(e) and 29 U.S.C. § 1451(d). Where an action is brought under ERISA Sections 4301 and 502 (29 U.S.C. §§ 1451 and 1132) in a district court of the United States, it may be brought, at Plaintiff's discretion, in the district where the plan is administered, where the breach took place, or where the defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found. The employee benefits plan relevant to this case, the Clerks and Lumber Handlers Pension Plan (the "Plan"), is administered in this judicial district and payment of contributions to the Plan is made within this judicial distrct as well.

## INTRADISTRICT ASSIGNMENT

5. Assignment within this judicial district to either the San Francisco Division or the Oakland Division is proper under Civil Local Rule 3-2 of this Court because the Plan is administered in Alameda County and payment of contributions is also made to the Plan's administrative offices in Alameda County.

## PARTIES

6. At all relevant times, Plaintiff, the Board of Trustees of the Clerks and Lumber Handlers Pension Fund (the "Board of Trustees") was and is the plan administrator and plan sponsor for the Plan. Plaintiff brings this action as a fiduciary for the Plan. The Plan is, and at all relevant times was, an "employee benefit plan" as defined in ERISA Section 3(3) (29 U.S.C. § 1002(3)), an "employee benefit pension plan" as defined in ERISA Section 3(2) (29 U.S.C. 1002(2)), and a "multiemployer plan" as defined in ERISA Sections 3(37) and 4001(a)(3) (29 U.S.C. §§ 1002(37) and 1301(a)(3)). The Plan is governed by ERISA.

7. Pursuant to ERISA Sections 502(a)(3) and 4301(a)(1) (29 U.S.C. §§ 1132(a)(3) and 1451(a)(1)), the Board of Trustees is authorized to bring this action on behalf of its participants and beneficiaries for the purpose of collecting withdrawal liability.

8. At all relevant times, defendant Piedmont Lumber & Mill Company, a California corporation ("Piedmont"), was an employer within the meaning of ERISA Section 3(5) (29 U.S.C.

COMPLAINT; Case No.: 2

#1313394

§ 1002(5)) and at all relevant times was engaged in an industry affecting commerce within the meaning of ERISA Sections 3(11) and (12) (29 U.S.C. §§ 1002(11) and (12)). Piedmont had employees who were jointly represented by the Clerks and Lumber Handlers Local 886 (the "Union") for the purposes of collective bargaining.

9. At all relevant times, defendant William C. Myer, Jr. ("Myer") was and is the President and CEO of defendant Piedmont. Plaintiff is informed and does believe and alleges based thereon that defendant Myer is the holder of 68% of the voting stock of defendant Piedmont.

10. Plaintiff is informed and does believe and alleges based thereon that, at all relevant times, The Oliver Family Trust dated April 25, 2002 (the "Oliver Trust"), is the holder of 32% of the voting stock of defendant Piedmont.

11. Plaintiff is informed and does believe and alleges based thereon that, at all relevant times, Wendy M. Oliver ("Oliver") is an *alter ego* of the Oliver Trust. Oliver was the beneficial owner of 32% of the voting stock of defendant Piedmont.

12. Oliver is named as a defendant to this action in her representative capacity as trustee to the Oliver Trust and in her individual capacity.

13. Defendants DOES 1-20 are entities and/or other persons that are within the Piedmont Controlled Group, as defined in paragraph 17 below, under ERISA § 4001(b)(1) (29 U.S.C. § 1301(b)(1)). Plaintiff presently does not know the identities of such entities or persons. Plaintiff is using fictitious names for the defendants because Plaintiff is unable to ascertain their true identity at this time. Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff will amend the Complaint to add the true names of the fictitious defendants once their identities are discovered.

## CLAIM FOR RELIEF

14. Plaintiffs hereby incorporate by reference each allegation contained in Paragraphs 1 through 13 as fully set forth herein.

15. On or about March 19, 2010, Myer and the Oliver Trust directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of Piedmont.

16. On or about March 19, 2010, Myer and the Oliver Trust owned and operated an "unincorporated trade or business," within the meaning of ERISA Section 4001(b)(1) (29 U.S.C. § 1301(b)(1)), that consisted of leasing commercial properties (the "Real Estate Business"). On information and belief, the Real Estate Business owned and leased, at a minimum, the following properties:

    a. Owned 100% of the real property located at 2345 South Main Street in Lakeport, California and leased the property to Piedmont Rock Yard, Lucy's Dog House Grooming, and Smith & Associates Tax & Bookkeeping Service;

    b. Owned 50% of the real property located at 351 40th Street in Oakland, California and leased the property to Piedmont and then to Economy Lumber Co. of Oakland;

    c. Owned 50% of the real property located at 2860 North Main Street in Walnut Creek, California and leased the property to Piedmont; and

    d. Owned 50% of the real property located at 2120 Piedmont Way in Pittsburg, California and leased the property to Piedmont.

17. On or about March 19, 2010, Piedmont and the Real Estate Business were a group of trades or businesses under common control (the "Piedmont Controlled Group") and therefore constituted a single employer within the meaning of ERISA Section 4001(b)(1) (29 U.S.C. § 1301(b)(1)), and the regulations promulgated thereunder.

18. The Piedmont Controlled Group is the "employer" for purposes of the determination and assessment of withdrawal liability under ERISA Title IV.

19. During all relevant times, Piedmont was bound by collective bargaining agreements with the Union, under which Piedmont was required to make contributions to the Plan on behalf of certain employees

20. The Board of Trustees determined that, on or about March 19, 2010, the Piedmont Controlled Group permanently ceased to have an obligation to contribute to the Plan or

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

permanently ceased all covered operations, thereby effecting a "complete withdrawal," as defined in ERISA Section 4203 (29 U.S.C. § 1383).

21. As a result of this complete withdrawal, the Plan determined that the Piedmont Controlled Group incurred joint and several withdrawal liability to the Plan in the principal amount of $1,660,266.00, as determined under ERISA Section 4201(b) (29 U.S.C. § 1381(b)) (the "Withdrawal Liability").

22. On or about January 6, 2011, the Piedmont Controlled Group, through Piedmont, received notice and demand for payment of the Withdrawal Liability issued by the Plan in accordance with ERISA Sections 4202(2) and 4219(b)(1) (29 U.S.C. §§ 1382(2) and 1399(b)(1)).

23. Pursuant to ERISA Sections 4219(c)(2) and 4221(d) (29 U.S.C. §§ 1399(c)(2) and 1401(d)), withdrawal liability payments must be made in accordance with the schedule set forth by the plan sponsor.

24. Despite its clear, unequivocal obligations under ERISA, the Piedmont Controlled Group has at all times relevant to this suit, including the period after January 6, 2011, failed to pay the Piedmont Controlled Group's withdrawal liability.

25. The Piedmont Controlled Group is now in default as defined by ERISA section 4219(c)(5) (29 U.S.C. § 1399(c)(5)).

26. The Piedmont Controlled Group has failed to timely request review of the Plan's withdrawal liability assessment pursuant to ERISA section 4219(b)(2)(A) (29 U.S.C. § 1399(b)(2)(A)).

27. The Piedmont Controlled Group failed to demand or initiate arbitration under ERISA section 4221 (28 U.S.C. 1401).

28. Because it failed to demand or initiate arbitration regarding its withdrawal liability dispute, the Piedmont Controlled Group has waived its right to dispute withdrawal liability, which is now due and owing from the Piedmont Controlled Group pursuant to ERISA section 4221(b)(1) (29 U.S.C. § 1401(b)(1)).

29. Piedmont and the Real Estate Business, as members of the Piedmont Controlled Group, are jointly and severally liable to the Plan for the withdrawal liability.

30. Myer and the Oliver Trust, as owners of the unincorporated Real Estate Business, are liable for the liability of the Real Estate Business.

31. Myer and the Oliver Trust, as the owners of the unincorporated Real Estate Business, are liable for the withdrawal liability incurred by the Piedmont Controlled Group which includes the unpaid principal amount of the withdrawal liability, assessment, interest and all penalties as allowed by ERISA section 502(g)(2) (29 U.S.C. §§ 1132(g)(2)).

32. On information and belief, Oliver is the trustee, settlor, and primary beneficiary of the Oliver Trust. As an *alter ego* of the Oliver Trust, Oliver is liable for the liability of the Oliver Trust.

33. Because of the Piedmont Controlled Group's default, the amount of withdrawal liability is now due and owing to the Plan. That amount totals $1,660,266.00. Further, in accordance ERISA Sections 502(g)(2) and 4301 (29 U.S.C. §§ 1132(g)(2) and 1451), the Piedmont Controlled Group is obligated to pay liquidated damages, interest, attorney's fees and costs of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to award it a judgment against the Defendants in the full amount of the withdrawal liability owed by Defendants, together with interest, liquidated damages, attorney's fees and costs, and such other legal and equitable relief to which Plaintiff is entitled.

DATED: August 22, 2013

TRUCKER ✦ HUSS

By: /s/Clarissa A. Kang
Clarissa A. Kang
Sean T. Strauss
Attorneys for Plaintiff
BOARD OF TRUSTEES OF THE CLERKS
AND LUMBER HANDLERS PENSION FUND

COMPLAINT; Case No.: 6

#1313394