UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE KEN LUSBY CLERKS & LUMBER HANDLERS PENSION FUND,<br><br>Plaintiff,<br><br>v.<br><br>PIEDMONT LUMBER & MILL COMPANY, et al.,<br><br>Defendants. | Case No. 13-cv-03898-VC (JSC)<br><br>**ORDER RE: PLAINTIFF'S MOTIONS TO COMPEL SUPPLEMENTAL INTERROGATORY RESPONSES**<br><br>Re: Dkt. Nos. 67, 68 |

Now pending before the Court are the parties' joint discovery letters wherein Plaintiff Board of Trustees of the Ken Lusby Clerks & Lumber Handlers Pension Fund ("the Board") seeks to compel supplemental interrogatory responses from Defendants Piedmont Lumber & Mill Company ("Piedmont") and William C. Myer, Jr. ("Myer"). (Dkt. Nos. 67, 68.) After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7–1(b), and rules as follows.

**BACKGROUND**

In this ERISA withdrawal liability action, the Board seeks to collect amounts owed as a result of Piedmont's withdrawal from an employee benefit plan. Piedmont operated several lumber supply stores, including one located at 2465 South Main Street in Lakeport, California ("the Lakeport Property"). (Dkt. No. 62 ¶ 8.) The Board alleges that Piedmont's two shareholders are Myer and the Oliver Family Trust (with defendant Wendy Oliver as the alter ego of the Trust). (*Id.* at ¶¶ 9-12.) The Second Amended Complaint, the operative complaint in this action, alleges that Myer and Oliver effectively operated a real estate business at the Lakeport Property, the operations of which included collecting rents from Piedmont as well as other tenants. (Dkt. No.

62 ¶¶ 16-23.) Because Piedmont and the real estate business were in common control, the theory goes, the unincorporated real estate business (*i.e.*, Myer and Oliver individually) are jointly and severally liable for Piedmont's withdrawal liability. (Dkt. No. 62 ¶¶ 24-29; *see also* Dkt. No. 67 at 1 (citing *Bd. of Trs. of W. Conference of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892 (9th Cir. 1988)).)

The parties' present dispute involves whether Piedmont must answer interrogatories asking Defendants to identify payments from Piedmont to Myer and Oliver.

## DISCUSSION

Under the Federal Rules of Civil Procedure a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). "The scope of discovery under the Federal Rules has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal quotation marks omitted). If a party fails to make disclosures or cooperate in discovery, the discovering party may move for an order compelling discovery. Fed. R. Civ. P. 37(a). The moving party bears the burden of "informing the court of the reasons that any objections are not justified" and why the information sought is relevant to the action. *Oyarzo v. Tuolumne Fire Dist.*, 2013 WL 1758798, at *4 (E.D. Cal. Apr. 24, 2013).

**A.     Piedmont Interrogatories**

The Board seeks to compel responses from Piedmont to the following interrogatories:

> Interrogatory No. 7: IDENTIFY all payments of money of any type (including but not limited to salary, dividends, rents, and/or expense reimbursement) that YOU made to co-defendant William C. Myer Jr. from 20 January 1, 2000 to the present.
>
> Interrogatory No. 8: IDENTIFY all payments of money of any type (including but not limited to salary, dividends, rents, and/or expense reimbursement) that YOU made to co-defendant Wendy M. Oliver, in her personal capacity or as Trustee for the Oliver Family Trust, from January 1, 2000 to the present.

2

1  (Dkt. No. 67-1.)  The Board subsequently limited the scope of these interrogatories to payments
2  made by Piedmont to Myer or Oliver from January 1, 2008 to the present.  Rather than provide a
3  complete answer to these interrogatories, Piedmont referred the Board to its answers to other
4  interrogatories regarding rental payments made to landlords at three separate properties not
5  including the Lakeport Property.  Piedmont refused to reveal any other payments of money made
6  to Myer or Oliver.  The Board asserts that the purpose of the two interrogatories is to determine
7  whether "(1) Piedmont made rental payment to its co-defendants for use of the Lakeport Property,
8  (2) Piedmont made payments to its co-defendants in lieu of rent for its use of the Lakeport
9  Property, and (3) Piedmont distributed money to Myer and Oliver in transactions to evade or avoid
10 withdrawal liability."  (*Id.* at 3.)

11  Piedmont must identify all rental payments it made to Myer or Oliver for use of the
12 Lakeport property because that information is relevant to the Board's claim that Myer and Oliver
13 are jointly and severally liable for Piedmont's withdrawal liability.  Under the Board's theory,
14 Myer and Oliver are liable for the amount due if they operated a trade or business under common
15 control with Piedmont, such trade or business being the Lakeport property.  Payments made from
16 Piedmont to Myer or Oliver for rental of the Lakeport property could help establish that Myer and
17 Oliver operated such a trade or business at the Lakeport property and that this business was under
18 common control with Piedmont.  The Court rejects Piedmont's contention that rental payments it
19 made in relation to the Lakefront Property are irrelevant since the first amended complaint, which
20 was the operative complaint at the time the interrogatories were answered, does not include any
21 allegation regarding the Lakeport Property.  Over a month ago, the Board filed an amended
22 complaint that included allegations regarding the Lakeport Property; indeed, it focuses on the
23 Lakeport Property.  Piedmont must supplement its answers so they are responsive to the new
24 allegations.

25  Piedmont's additional arguments to the contrary are unpersuasive.  Piedmont asserts that
26 the request for rental payments is cumulative because the Board can simply look to Myer's and
27 Oliver's tax returns, which have been produced in this litigation, to figure out what payments
28 Piedmont made to them.  However, it is undisputed the tax returns provide only a lump sum

amount for rent received for the Lakeport property.  Because the returns do not identify the renter making the payments, the returns are no substitute to Piedmont directly revealing rental payments it made to Myer or Oliver.  Further, while Piedmont asserts that Defendants have produced bank statements "clearly showing the rents received by Myer and Oliver from Piedmont" (Dkt. No. 67 at 7), the Board denies receiving any such statements (*id.* at 3 n.6).  Finally, Piedmont provides no non-conclusory argument as to why identifying rental payments it made to Myer and Oliver would be burdensome.  Although Piedmont has been out of business for some time, it does not follow that its rental payment history is inaccessible, especially since it answered interrogatories regarding rental payments made for other locations.[1]

The Court, however, declines at this time to compel Piedmont to identify non-rental payments made to Myer and Oliver as such information is not relevant to an issue in this case as alleged in the SAC.  The Board asserts that such information is necessary to determine whether Piedmont made payments to its co-defendants in lieu of rent for its use of the Lakeport Property.  However, if Piedmont made payments to Myer and Oliver for its use of the Lakeport Property, such payments are rent and should be identified in Piedmont's response to the interrogatory.  To be sure, if Piedmont fails to identify any rental payments made for its use of the Lakeport Property, or identifies insufficient rental payments, the Board at that time would be entitled to inquire into other payments made to Myer and Oliver as a means of explaining Piedmont's rent-free use of the Lakeport Property.

The Board also contends that non-rental payments could show that Myer and Oliver were directing payments out of Piedmont, and to themselves, in an effort to divert amounts owed for withdrawal liability.  The Board asserts that such actions would subject Myer and Oliver, as shareholders of Piedmont, to withdrawal liability.  (*See* Dkt. No. 67 at 1 (citing 29 U.S.C. § 1392(c); *Central States, Se. & Sw. Areas Pension Fund v. Minneapolis Van & Warehouse Co.*, 764 F. Supp. 1289, 1294 (N.D. Ill. 1991) (recognizing as a "basic tenet of corporate law" that

---

[1] Piedmont also asserts objections based on privacy concerns for Myer and Oliver.  Because these objections are directed toward the identification of non-rental payments—which the Court is not compelling in this Order—the Court need not address the argument.

4

"[w]hen the assets of a corporation are distributed to its shareholders leaving corporate debts unpaid, liability of the shareholders to a creditor, to the extent of the value of the assets received is beyond question"). The SAC, however, includes no claim, let alone allegation, that Myer and Oliver are liable as shareholders, to the extent of the value of the assets received, for diverting Piedmont's funds to themselves; rather, the only allegations in the SAC regarding Myer's and Oliver's liability anchor liability on the shared control of their Lakeport Property company and Piedmont. The Board is thus not entitled to discovery on this unalleged theory. The cases cited by the Board for the proposition that courts routinely order "wide-ranging discovery into the finances of the withdrawing employer and its controlling shareholder to enable a pension plan . . . to determine whether any transactions to evade or avoid withdrawal liability occurred" are inapposite. (Dkt. No. 67 at 2.) Those cases, all dealing with a motion for default judgment, granted the pension fund's claim for injunctive relief to require the withdrawing employer to produce information regarding transactions to avoid liability. *See, e.g.*, *Auto. Indus. Pension Trust Fund v. Bi-City Paint & Body Co., Inc.*, 2012 WL 6799735, at *9 (N.D. Cal. Dec. 06, 2012) (requesting in claim for injunctive relief "all information regarding potential transaction to evade or avoid withdrawal liability in violation of ERISA § 4212(c) (29 U.S.C. § 1392(c))."). No such claim presently exists in this case.

Accordingly, the Board's motion to compel is granted only to the extent it seeks to compel identification of rental payments made from Piedmont to Myer or Oliver for use of the Lakeport Property from January 1, 2008 to the present. The Board's motion to compel as to non-rental payments is denied without prejudice. If no rental payments are identified, however, the Court expects that Piedmont will follow the guidance in this Order without the need for a further motion to compel.

**B.  Myer Interrogatories**

The Board also seeks to compel responses from Myer to the following interrogatories:

> Interrogatory No. 1 (Second Set): IDENTIFY the tenant(s) who paid any portion of the $24,000 in rents related to 2345 South Main Street, Lakeport, California in 2009, as stated in the document previously produced in this litigation at PIEDMONT 000198.

> Interrogatory No. 2 (Second Set): IDENTIFY the tenant(s) who paid any portion of the $14,600 in rents related to 2345 South Main Street, Lakeport, California in 2010, as stated in the document previously produced in this litigation at PIEDMONT 000199.
>
> Interrogatory No. 3 (First Set): IDENTIFY all payments of money that YOU received from any tenant or occupant of the real property located at 2345 South Main Street in Lakeport, California from November 25, 2000 to the present.

(Dkt. No. 68-3.) The Board has agreed to limit the scope of Interrogatory No. 3 to "the total amount of rent paid by each tenant in each calendar year . . . [from] January 1, 2004 to the present." (*Id.* at 3.)

Myer refused to answer Interrogatories Nos. 1 and 2 on the ground that he did not create the documents referenced in the interrogatories—though he did produce them—and thus lacks sufficient information upon which to provide a response. Myer contends that "while the discovery requests may not require an interpretation of the document referenced, they do require an understanding of what rental payments were relied upon in creating the documents referenced." (Dkt. No. 68-3 at 7.) Myer's objection is not well taken. Myer acknowledges that the rent amounts referenced in the requests are identical to the rent amounts in his tax returns for the relevant years. Myer also "does not necessarily dispute the amounts set forth in the reports or tax returns." (*Id.*) Moreover, in responding to Interrogatory No. 3 (discussed below), Myer directs the Board to "PIEDMONT000198"—one of the two documents he claims to have no personal knowledge of. (Dkt. No. 68-3 at 7-8.) Myer's objections also ignore his duty to conduct at least some research when needed to form a reasonable response. Specifically, while "[a] responding party is not generally required to conduct extensive research in order to answer an interrogatory, [] a reasonable effort to respond must be made." *Jacobs v. Quinones*, 2014 WL 2091252, at *5 (E.D. Cal. May 16, 2014). Myer fails to show that he made *any* effort to assure himself that the documents *he* (and his co-defendants) produced in this litigation reflected his understanding of the rental payments at issue.

That Myer could have done more to answer Interrogatories Nos. 1 and 2 is confirmed explicitly by Myer himself: "In response to Interrogatory Nos. 1 and 2, Myer could provide further responses referring Plaintiff to documents and discovery requests previously provided . . . ." (Dkt.

6

1 No. 68-3 at 8.) Myer, however, contends that this would be "a waste of time and resources." (*Id.*)
2 To the contrary, what is a waste of time and resources is Myer's quibbling over straightforward
3 discovery requests to the point where hours of the parties'—and the Court's—time is spent
4 resolving an unnecessary dispute.

5 Myer shall also provide a complete answer Interrogatory No. 3 as amended by the Board in
6 the joint letter. Specifically, Myer shall identify "the total amount of rent paid by each tenant [of
7 the Lakeport Property] in each calendar year . . . [from] January 1, 2004 to the present." (*Id.* at 3.)
8 While Myer may have provided some of the requested information in his previous response, Myer
9 concedes that he did not provide a complete answer; for example, Myer provided a tenant's rental
10 payment for some years but not others. To the extent Myer argues that he cannot fully answer the
11 request without speculating because "payments were not made directly to [him]," (Dkt. No. 68-3
12 at 6), the Court reminds Myer of his obligation to conduct reasonable research in order to answer
13 the interrogatory.

14 The Board's motion to compel Myer's response to Interrogatories Nos. 1, 2, and 3 (as
15 amended herein) is accordingly GRANTED.

## CONCLUSION

17 For the reasons stated above, the Board's motion to compel Piedmont's response to
18 Interrogatory Nos. 7 and 8 is GRANTED only to the extent it seeks to compel identification of
19 rental payments made from Piedmont to Myer or Oliver for use of the Lakeport Property from
20 January 1, 2008 to the present. The Board's motion to compel as to non-rental payments is
21 DENIED without prejudice. Further, the Board's motion to compel Myer's response to
22 Interrogatories Nos. 1, 2, and 3 (as amended herein) is GRANTED. The supplemental responses
23 must be provided within 14 days of the date of this Order

24 This Order disposes of Docket No. 67 and 68-3.

25 **IT IS SO ORDERED.**

26 Dated: July 3, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge